UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF STERLING HEIGHTS, ET AL.,

        Plaintiffs,

v.

UNITED NATIONAL INSURANCE
COMPANY, ET AL.,

        Defendants.

_____/

Case No. 03-72773

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
AND DEFENDANT UNITED NATIONAL INSURANCE COMPANY'S CROSS
MOTIONS FOR SUMMARY JUDGMENT [220, 222]**

This insurance dispute comes before the Court on Plaintiffs' motion for partial summary judgment and Defendant United National Insurance Company ("United")'s motion for summary judgment.  For the reasons stated below, Plaintiffs' and Defendant United's cross motions are GRANTED IN PART and DENIED IN PART.

**I.**    **Background**

    **A. United Policies**

        **1.  Primary CGL Coverage**

United sold Insureds United Policy No. CP 65070, covering the policy period of September 1, 1999 to September 1, 2002.  (Pls.' Ex. F.)  The United Policy is separated into three terms:  (1) September 1, 1999 to September 1, 2000; (2) September 1, 2000 to September 1, 2001; and (3) September 1, 2001 to September 1, 2002.  (*Id.*, United Policy, Endorsement No. 1.)  The latter two terms are implicated in this coverage action for a total

maximum CGL coverage of $1,800,000 ($900,000 x 2).  (Pls.' Mot., at 5.)

The CGL section of United's policy provides annual aggregate indemnity limits of $900,000 in excess of a Self-Insured Retention ("SIR") of $100,000 per policy term.[1]  The excess limit and the SIR are eroded by defense expenses.  (United Resp. at 5.)  The CGL insuring agreement provides that:

> The Company agrees, subject to the policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay by reason of the liability imposed upon the **ASSURED** under contract or agreement, for damage direct or consequential, and expenses, all as more fully defined by the term, **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY, BODILY INJURY** including death at any time resulting therefrom, suffered or alleged to have been suffered by any person(s) or organization(s), and/or **PROPERTY DAMAGE** or the loss of use thereof, arising out of any **OCCURRENCE** from any cause including **HOST/LIQUOR LIABILITY, INCIDENTAL MEDICAL MALPRACTICE**, or liability arising out of **LAW ENFORCEMENT ACTIVITIES**, happening during the **PERIOD OF INSURANCE**.

(United Policy, § II, CGL, at 26.)  The following Policy definitions are relevant:

> **10.  LAW ENFORCEMENT ACTIVITIES** means the activities of any **ASSURED** while acting as a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **ASSURED** or other authorized employment of a law enforcement nature.
>
> * * *
>
> **14.  PERSONAL INJURY** means any Injury other than **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the following:
>
> Mental Anguish, Shock, Sickness, Disease, Disability or Death not

---

[1]The United Policy also has Public Officials Errors and Omissions ("POL") coverage which provides indemnity coverage for "Wrongful Acts."  This coverage is not at issue here. This Court previously found, and Insureds are not contesting, that the coverage limit for this POL coverage is $100,000 which is equal to the Self-Insured Retention.  (2/11/04 Order at 29.)

2

arising from Physical Injury.  It also means Wrongful Entry, Wrongful Eviction, Wrongful Detention, Malicious Prosecution, Humiliation, Misappropriation of Advertising Ideas, Invasion of Rights of Privacy, Libel, Slander or Defamation of Character, Piracy and any Infringement of Copyright or of Property, Erroneous Service of Civil Papers, Assault and Disparagement of Property.   In addition, as respects **LAW ENFORCEMENT ACTIVITIES, PERSONAL INJURY** also includes False Arrest, False Imprisonment, and Detention, and any resultant claims arising out of discrimination and civil rights violations in conjunction with these **LAW ENFORCEMENT ACTIVITIES**.

\* \* \*

22.   **ULTIMATE NET LOSS** means the total sum which the **ASSURED** is obligated to pay because of loss or damage covered under any Section of this policy, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.

**ULTIMATE NET LOSS** also includes . . . all sums paid as . . . expenses of lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims and **SUITS** which are paid as a consequence of any occurrence covered hereunder. . . .

\* \* \*

23.   **WRONGFUL ACT** means any actual or alleged error or mis-statement, omission, act or neglect or breach of duty due to misfeasance, malfeasance, and non-feasance, including **EMPLOYMENT RELATED PRACTICES**, discrimination and violations of civil rights by the **ASSURED**, including mental anguish which arises out of **EMPLOYMENT RELATED PRACTICES**, discrimination and violations of civil rights by the **ASSURED**.

(United Policy, § Definitions at 14-17.)

The CGL coverage is subject to Exclusion (h), which excludes "Any claim arising from

**WRONGFUL ACTS**."  (United Policy, CGL Coverage, § II, Exclusion (h).)

**2. Excess CGL Coverage**

United also sold Insureds an Excess Third Party Liability Policy, No. XTP 58908, for

the same three annual periods covering from September 1, 1999 to September 1, 2002. (Pls.' Ex. H, Excess Policy.)  This Excess Policy provides excess CGL coverage in the amount of $19 million above the $1 million underlying CGL coverage per policy term.  Two policy years are implicated here (2000 to 2001 and 2001 to 2002) for a total excess CGL indemnity exposure of $38,000,000 ($19,000,000 x 2).  The Excess Policy follows form to the CGL portion of United's policy.  (United Excess Policy, GL Fol. Form Endorsement.)

## B. Underlying Litigation

This Court is familiar with the issues raised in this coverage action as well as the underlying actions filed against the Plaintiffs ("Insureds"), having presided over the two underlying federal actions brought by the Hillside Plaintiffs against the Insureds and having addressed a number of coverage issues in previous opinions and orders.  Nonetheless, because these cross-motions focus on the nature of the underlying claims asserted against Insureds in the underlying actions, a brief summary of the claims are summarized below.

## Underlying State Action

On August 6, 2001, Hillside filed a State Action against the City and Duchane in Macomb County Circuit Court, seeking damages in excess of $14 million, and asserting claims for:  (1) superintending control, (2) declaratory judgment, (3) denial of substantive and procedural due process, (4) business libel and slander, and (5) anticipatory breach/detrimental reliance.

As to its libel and slander per se claims, Hillside requested money damages resulting from oral and written statements it alleged the City made to third parties.  (*Id.* at ¶ 58.)

Hillside filed an amended complaint in the State Action, adding the following five claims:  breach of contract (Count VI), breach of an implied covenant (Count VII),

4

fraudulent misrepresentation (Fraud in the Inducement) (Count VIII), negligent misrepresentation (Count IX), silent fraud (Count X), breach of an implied covenant of good faith and fair dealing (Count XI), and tortious interference with contractual relationships and/or advantageous business expectations (Count XII).

On January 16, 2002, Hillside filed a second amended complaint in the State Action (Def.'s Ex. U, ¶ 52, 53.)

### The Guardian Angels Action

On June 4, 2002, Hillside and three charitable organizations, including the Guardian Angels Catholic School ("Guardian Angels Plaintiffs"), filed an action in federal court ("Guardian Angels Action") against the City based on the City's failure to approve special licenses for the sale of alcohol at the amphitheater. The complaint alleged the following claims: (1) violation of 42 U.S.C. § 1983 for denial of plaintiffs' federal rights guaranteed under the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution (Count I); (2) violation of 42 U.S.C. § 1986 (Count II); and (3) direct constitutional claims for violation of plaintiffs' due process, equal protection and First Amendment rights (Counts III, IV, and V). (Def.'s Ex. V.) The complaint was amended the following day, adding a claim for a violation of 42 U.S.C. § 1985(3) (Count VI). (Def.'s Ex. W.) This Action alleged the City wrongfully refused to grant Hillside special one day liquor licenses to sell and serve alcohol at the amphitheater and sought injunctive relief. It alleged a pattern and practice of harassing conduct, allegedly as retaliation for Hillside's filing of the State Action. (*Id.*)

On June 18, 2002, this Court heard a motion for preliminary injunction and mediated a resolution. As part of the resolution, the Guardian Angels Plaintiffs agreed to dismiss

5

their case against the City without prejudice.  As the Court observed, this did not preclude Plaintiffs from refiling a suit against the City.

On June 21, 2002, three days after the Guardian Angels Action was settled, the court in the State Action declared that the City may not enforce its noise ordinance against Hillside when Hillside complies with the terms of the SALU.  (Def.'s Ex. X.)

On September 10, 2002, Hillside filed another suit in federal court.

**Federal Action**

On September 10, 2002, the Hillside Plaintiffs and Roncelli, Inc. filed another lawsuit in federal court ("Federal Action") against the same defendants named in the Guardian Angels Action.  (Def.'s Ex. Y.)  On September 24, 2002, an amended complaint for damages and injunctive relief was filed.  (Def.'s Ex. Z.)  The amended complaint asserted violations of:  (1) 42 U.S.C. § 1983 (for procedural and substantive due process violations and equal protection violations); (2) 42 U.S.C. § 1985(3); (3) 42 U.S.C. § 1986; (4) Constitutional rights to due process and equal protection; (5) Constitutional first amendment rights; and (5) 18 U.S.C. §§ 1961, 1962 (RICO) (against Duchane and the O'Reilly Defendants).

The amended complaint also alleged that the City and other defendants "made it clear that they intend to punish Hillside, and any others whom they believe [were] affiliated with Hillside, for filing the state court lawsuit and for insisting on their rights under the grant of the [SALU]."  (*Id.* at ¶ 54; *see also* ¶¶ 63, 65, 68-70, 72.)  Alleged evidence of the City's intent included its issuance of three criminal noise violations, six criminal zoning violations, refusals to issue various permits, and excessive police presence during amphitheater events.  (*Id.* at 54.)  The amended complaint asserted that, as a result of the Insureds'

6

alleged retaliatory conduct and civil rights violations, Hillside's and Roncelli Inc.'s goodwill and business interests were damaged.  (*Id.* at ¶¶ 73, 74, 83, 90, 95, 99, 104, 108.)

Roncelli Inc., a corporate plaintiff in the Federal Action, was not a plaintiff in the State or Guardian Angels Actions.  In the Federal Action, Roncelli Inc. alleged for the first time that Insureds had violated its civil and constitutional rights, causing harm to its reputation and causing it to lose a construction contract with the Detroit News worth "well over $200 million."  (Riberas Dep. at 32-35, 139; Wickersham Dep. at 152-53, 156-58.)

On October 30, 2003, this Court considered a motion for partial summary judgment brought on behalf of the Hillside Plaintiffs, including Roncelli Inc., on the issue of the Insureds' liability.  Relevant to this coverage action, the Court held that the Hillside Plaintiffs:  (1) were entitled to summary judgment against the Insureds on their § 1983 claim for violation of their procedural due process rights with respect to their constitutionally-protected property interest in the SALU; (2) were entitled to summary judgment on their § 1983 procedural due process claim with respect to their liberty interests; (3) were entitled to summary judgment on their substantive due process claims; and (4) were not entitled to summary judgment on their § 1983 equal protection claims, because questions of material fact remained for trial.

On March 22, 2004, the Hillside Plaintiffs (including Roncelli Inc.) and Insureds settled the State and Federal Actions for $31 million.  (Pls.' Ex. I.)

**Coverage Action**

On July 18, 2003, Insureds filed this coverage action against United and various other insurers.

On February 11, 2004, this Court considered the Insureds' and United's cross-

7

motions for partial summary judgment. United argued that, while it owes a duty to indemnify defense costs for covered claims, there is no duty to defend, and, with the possible exception of the libel/slander/defamation claims asserted in the underlying State Action, it has no duty to indemnify the claims asserted in the underlying actions. (2/14/04 Order at 2.) This Court granted United's motion. (*Id.*) It observed that, pursuant to United's policy language, its duty to indemnify for defense costs is triggered once coverage is established. (*Id.* at 28.) The Court then considered whether claims asserted in the underlying State and Federal Actions fell within the coverage provisions of the United policies, observing that "Plaintiffs have the burden of proving that a loss falls within the coverage provisions of an insurance policy." (*Id.* at 29.) With the exception of the libel/slander/defamation claims asserted in the underlying action, this Court concluded that the Insureds had not met that burden with respect to CGL coverage for the underlying civil rights claims. (*Id.*) Specifically, it rejected Insureds' arguments (almost identical to those raised here) that the civil rights claims asserted in the Federal Action fall within United's policy definition for: (1) covered "Property Damage" because the Hillside Plaintiffs alleged that, as a result of the Insureds' civil rights violations, they lost the use of their property; and (2) covered "Personal Injury" because they allege "Infringement of . . . Property," "Wrongful Entry," "Wrongful Eviction," and "Malicious Prosecution." (*Id.* at 29-32.)

This Court considered the basis or cause of the Hillside Plaintiffs' alleged injuries and determined that it was the Insureds' violation of their civil rights. This Court further observed that, "because the underlying Federal Action alleges a civil rights claim that falls within the definition of covered 'wrongful acts' under United's Public Officers coverage section, (United Policy at 17), it is expressly excluded from coverage under CGL Exclusion

8

2:03-cv-72773-NGE   Doc # 309   Filed 01/27/06   Pg 9 of 17   Pg ID 15117

(h)." (*Id.* at 32.)

On June 30, 2004, Insureds filed an amended complaint, alleging an additional claim that Defendant Insurers breached an implied covenant of good faith and fair dealing. (Pls.' Ex. GG.)

## II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for

9

the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Analysis

### A.  Michigan Contract Construction Principles

The rules of construction for insurance contracts are the same as those for any other written contract. *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993). The court must first determine whether the contract language at issue is ambiguous. That question is one of law for the court. *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983).   Construction of a contract, whether it is ambiguous or unambiguous, likewise presents a question of law for the court. *Fragner v. American Community Mut. Ins. Co.*, 502 N.W.2d 350, 352 (Mich. Ct. App. 1993). The function of the court is to determine and give effect to the parties' intent as discerned from the policy's language, looking at the policy as a whole. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992).

A contract which admits of but one interpretation is unambiguous. *Fragner*, 502 N.W.2d at 352. In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Petovello v. Murray*, 362 N.W.2d 857, 858 (Mich. Ct. App. 1984).

If a contract is clear and unambiguous, the court must enforce the contract as written, according to its plain meaning, *Clevenger v. Allstate Ins. Co.*, 505 N.W.2d 553, 557 (Mich. 1993), without looking to extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 396 n. 6 (Mich. 1991). It is improper for the court to ignore the plain meaning of the policy's language in favor of a technical or strained construction. *Arco Indus. Corp. v. Travelers Ins. Co.*, 730 F. Supp. 59, 66 (W.D. Mich. 1989).

10

If the contract is ambiguous, the court must determine the intent of the parties.  To do so, the court may look to extrinsic evidence such as custom and usage.  *Michigan Millers Mut. Ins. Co v. Bronson Plating Co.*, 496 N.W.2d 373, 379 (Mich. Ct. App. 1992), *aff'd*, 519 N.W.2d 864 (Mich. 1994).   "Perhaps the most common of extrinsic aids to the construction of an insurance policy or other contract  is usage and custom."  *Allstate Ins. Co v. Freeman*, 443 N.W.2d 734, 760 (Mich. 1989) (Boyle, J.).

In addition, certain rules of construction apply.  Ambiguous terms in an insurance policy are construed in favor of the insured.  *Arco Indus. Corp. v. Am. Motorists Ins.*, 531 N.W.2d 168, 172 (Mich. 1995).  *Accord Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 786-87 (Mich. 2003) (holding that "[t]he rule of reasonable expectations clearly has no application to unambiguous contracts.  That is, one's alleged 'reasonable expectations' cannot supersede the clear language of a contract. . . . [Moreover], if a contract is ambiguous and the parties' intent cannot be discerned from extrinsic evidence, the contract should be interpreted against the insurer.  In other words, when its application is limited to ambiguous contracts, the rule of reasonable expectations is just a surrogate for the rule of construing against the drafter.").

It is the insurer's responsibility to clearly express limits on coverage.  *Auto Club Ins. Ass'n v. DeLaGarza*, 444 N.W.2d 803, 806 (Mich. 1989).  Thus, insurance exclusion clauses are construed strictly and narrowly.  *Auto-Owners v. Churchman*, 489 N.W.2d at 435; *Farm Bureau Mut. Ins. Co. v. Stark*, 468 N.W.2d 498, 501 (Mich. 1991).

## B. Cross-Motions

This matter is presently before the Court on Insureds' motion for partial summary judgment and United's motion for summary judgment.  The Court addresses Insureds'

11

motion first.

### 1. Insureds' Motion for Partial Summary Judgment

Insureds' motion argues that United owes a duty to indemnify Insureds for defense costs and damages because the slander/libel/defamation claims asserted in the State Action, and the civil rights claims asserted in the Federal Action fall within United's policy definition for covered "Personal Injury." United's policy defines "Personal Injury" to include injury:

> arising out of . . . wrongful entry, wrongful eviction, . . . libel, slander or defamation of character, piracy and infringement of copyright or property, . . . disparagement of property. In addition, as respect LAW ENFORCEMENT ACTIVITIES, PERSONAL INJURY also includes false arrest, false imprisonment, and detention, and any resultant claims arising out of discrimination and civil rights violations in conjunction with these LAW ENFORCEMENT ACTIVITIES.

(United Policy, § Definitions at 16.) Insureds' motion is GRANTED as to the State Action claims for libel, slander, and defamation. It is DENIED as to the civil rights claims asserted in the Federal Action.

### a. Federal Action Civil Rights Claims Are Not Claims for Covered "Personal Injury" of "Infringement of Property," "Wrongful Entry," "Wrongful Eviction" and "Malicious Prosecution"

In its February 11, 2004 Opinion and Order, this Court rejected Insureds' arguments that the civil rights claims asserted in the underlying Federal Action fall within United's policy definition of a covered "Personal Injury" because they allege "infringement of . . . property," "wrongful entry," "wrongful eviction" and "malicious prosecution." (2/11/04 Order at 30-32.) Insureds' renewed arguments here are to no avail. The rationale for rejecting these arguments remains unchanged. The Court is not persuaded by Insureds' argument

12

that undefined policy terms must be construed as ambiguous.  Michigan law instructs that undefined policy terms are to be construed in accordance with their "commonly understood, plain and ordinary meaning."  *Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 622 (Mich. 2004).

### b. Federal Action Civil Rights Claims Are Not Claims for Covered "Defamation" or "Disparagement of Property"

Insureds also argue that the civil rights claims asserted in the underlying Federal Action fall within United's policy definition of a covered "Personal Injury" because they contain allegations of "defamation" and "disparagement of property."  This Court disagrees.

The Court does not disagree with Insureds' argument that the indemnity coverage determination must focus on the basis or cause of the Hillside Plaintiffs' alleged injury, not the theory of liability asserted in the State and Federal Action complaints.  *See Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737-38 (Mich. 1989).  Nonetheless, Insureds' argument fails.

Examination of the underlying State Action reveals allegations of an injury to the Hillside Plaintiffs' goodwill, reputation, and their businesses caused by Insureds' slander, libel, and/or defamation.  Thus, those State Action claims fall within United's CGL definition of covered "Personal Injury," and United owes a duty to indemnify as to those State Action claims.  The same is not true of the Federal Action claims.

In the Federal Action, the Hillside Plaintiffs alleged injury to their goodwill, reputation, and businesses caused by Insureds' civil rights violations; e.g., violations of their procedural and substantive due process rights and equal protection rights.  (Federal Action, Am. Compl. at ¶¶ 73, 74, 83, 90, 95, 99, 104, 108.)  Thus, unlike the State Action, the basis or

13

cause of the alleged injury is the violation of the Hillside Plaintiffs' civil rights. That the Federal Action alleged loss of reputation, goodwill and business as damages for Insureds' civil rights violations does not give rise to an allegation of defamation or disparagement of property. *See Bd. of Trustees of Michigan State Univ. v. Continental Cas. Co.*, 730 F. Supp. 1408, 1413-14 (W.D. Mich. 1990) (reaching a similar conclusion in an insurance coverage action). Accordingly, these civil rights claims do not fall within United's CGL definition of a covered "Personal Injury." Rather, as this Court previously observed, these civil rights claims fall within the definition of covered "wrongful acts" under United's POL coverage section, (United Policy at 17), and are thus expressly excluded from coverage under CGL Exclusion (h)." (*Id.* at 32.)

### b. Federal Action Civil Rights Claims Are Not Claims for Covered "Law Enforcement Activities"

Finally, Insureds argue that the civil rights claims asserted in the Federal Action allege law enforcement activities that fall within United's CGL policy definition for a covered "Personal Injury." This Court disagrees. The plain language of that definition provides that:

> as respects **LAW ENFORCEMENT ACTIVITIES, PERSONAL INJURY** also includes <u>False Arrest, False Imprisonment, and Detention</u>, and <u>any resultant claims arising out of discrimination and civil rights violations</u> in conjunction with these **LAW ENFORCEMENT ACTIVITIES.**

(United Policy, § Definitions at 16 (emphasis added).) The underlying Federal Action does not allege any law enforcement activities giving rise to claims of false arrest, false imprisonment, or detention against Insureds. Thus, according to the plain language of the Policy, there can be no resultant claims of discrimination or civil rights violations in conjunction with any such law enforcement activities.

14

### 2.  United's Motion for Summary Judgment

United brings its motion for summary judgment arguing that:  (1) it owes no duty to indemnify Insureds for the libel/slander/defamation claims asserted in the State Action because Insureds' have not allocated the $31 million settlement between covered and uncovered claims under its policies; (2) it owes no duty to indemnify for defense costs because GenStar has a duty to defend in the State Action; (3) no questions of material fact exist on Insureds' claim that United breached the implied covenant of good faith and fair dealing; and (4) Insureds' claim for attorneys' fees as damages for a breach of that implied covenant must be dismissed as a matter of law.  For the reasons stated below, this Court DENIES United's motion as to the first three items and GRANTS as to the last.

### a.  United's Duty to Indemnify for State Action Libel/Slander/Defamation Claims

As discussed above, this Court has determined that, under its CGL and excess policies, United owes Insureds a duty to indemnify for the libel/slander/defamation claims asserted in the underlying State Action.  To the extent United's motion argues otherwise, it is DENIED.  To the extent it raises issues as to the allocation of defense costs and settlement damages, it is DENIED WITHOUT PREJUDICE.  Because questions remain regarding what insurance companies owe a duty to indemnify on the underlying State and Federal Action claims, it is premature to determine allocation issues.

### b.  United's Duty to Indemnify for Defense Costs

United owes a duty under its CGL and excess coverage policies to indemnify Insureds for the libel/slander/defamation claims asserted in the State Action.    As this Court

previously observed in its February 11, 2004 Order, United's duty to indemnify for defense costs is triggered once liability for indemnification coverage has been established. (2/11/04 Order at 27-28.)  Without citing policy language as support, United now argues that it owes no duty to indemnify for defense costs because:  (1) GenStar owed a duty to defend in the State Action and that should take priority over its duty to indemnify for defense costs; and (2) United offered to pay $150,882.43 for defense costs and Insureds never responded to that offer thus waiving any duty to indemnify for defense costs or limiting that duty to $150,882.43.  Insureds respond that:  (1) United's first argument raises allocation issues that do not absolve United of its contractual promise to indemnify for defense costs for covered claims; and (2) Insured's rejection of United's offer to pay some defense costs is justified in light of its contemporaneous demand for a complete release and thus cannot be construed as a waiver.  This Court agrees with Insureds.

### c.  Breach of Implied Covenant of Good Faith and Fair Dealing

Despite United's claims to the contrary, questions of fact exist on the issue whether United breached an implied covenant of good faith and fair dealing in investigating Insureds' claims and/or negotiating a settlement within coverage limits.  (*See* Pls.' Resp. at 18-21.)   Michigan law does recognize an implied contractual duty on the part of the insurer to act in good faith when investigating an insurance claim and when negotiating a settlement so that it falls within policy limits.  *Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 883 F. Supp. 1101, 1111 (E.D. Mich. 1995) (citing Michigan cases).  Michigan law, however, does not allow the recovery of attorneys' fees as damages for the breach of an implied covenant of good faith in an insurance contract.  *Burnside v. State Farm Fire & Cas. Co.*, 528 N.W.2d 749 (Mich. Ct. App. 1995).  Rejecting a contrary decision by the Sixth

16

Circuit, the Michigan Court of Appeals in *Burnside* held that the American rule applies and thus precludes the ability to recover attorneys' fees as an element of damages on such claims. *Id.* at 753 (rejecting *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir. 1985)). This Court predicts that the Michigan Supreme Court will reach a similar conclusion. Accordingly, United's motion is denied as to Insureds' contract claim for breach of an implied covenant of good faith and fair dealing, but granted as to the issue whether Insureds can recover attorneys' fees incurred in this coverage action as an element of their damages. They cannot.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' and Defendant United's cross motions are GRANTED IN PART and DENIED IN PART.


          s/Nancy G. Edmunds
          Nancy G. Edmunds
          United States District Judge

Dated:  January 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 27, 2006, by electronic and/or ordinary mail.

          s/Carol A. Hemeyer
          Case Manager