UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF STERLING HEIGHTS, ET AL.,

       Plaintiffs,

v.

UNITED NATIONAL INSURANCE
COMPANY, ET AL.,

       Defendants.

_____/

Case No. 03-72773

Honorable Nancy G. Edmunds

**ORDER REGARDING ALLOCATION OF UNITED NATIONAL INSURANCE COMPANY'S LIABILITY FOR THE $31 MILLION SETTLEMENT OF THE UNDERLYING ACTIONS UNDER ITS TRIGGERED PRIMARY AND EXCESS POLICIES [340-341, 326]**

This insurance dispute comes before the Court on its request that Plaintiffs ("Insureds") and Defendant United National Insurance Company ("United") brief the issue of apportionment of the $31 million settlement of the underlying State and Federal Actions.[1] Insureds argue that, pursuant to United's policy language, this Court must apply the "all sums" method of allocation. Alternatively, Insureds argue that the Court should apply the "pro rata by policy limits" approach. United argues that (1) Insureds must prove what portion, if any, of the settlement is attributable to the slander/libel/defamation claims asserted in the underlying State Action and covered under its policies; (2) the defamation

---

[1]This Court's request for additional briefing was limited to the issue of allocation of the settlement amount. It did not include arguments concerning Plaintiffs' claims for breach of an implied covenant of good faith and fair dealing. This Court denied United's motion for summary judgment as to this claim on January 27, 2006 [309] and also denied United's motion for reconsideration [313]. United's attempt to relitigate Plaintiffs' outstanding claim is thus rejected.

claims were defensible and thus objects to Insureds' settlement of those claims; and (3) the "all sums" method of allocation should not be applied.[2]  For the reasons stated below, this Court concludes that the "time-on-the-risk" proration method should be applied to allocate liability among the triggered insurance policies for the underlying $31 million settlement.

## I.    Facts

The Court is familiar with the facts and issues presented in this coverage action as well as the underlying State and Federal Actions, having presided over the two underlying Federal Actions brought by the Underlying Plaintiffs against the Insureds and having addressed a number of coverage issues in this matter in previous opinions and orders.  The facts relevant to the issue of allocation are as follows.

This Court has previously determined that coverage is triggered under policies issued by three separate insurance companies, one of whom is United, for three separate time periods:  September 1, 2000 to September 1, 2001; September 1, 2001 to September 1, 2002; and September 1, 2002 to May 13, 2003.  (1/27/06 Orders, Docket Nos. 308, 309, 310).  United's comprehensive general liability ("CGL") primary and excess policies issued to Insureds cover the first two time periods.[3]  As to those United policies, this Court has determined that United's duty to indemnify for defense costs and damages is triggered as a result of the slander/libel/defamation claims asserted in the underlying State Action.  (1/27/06 Order, Docket No. 309).  As to the § 1983 claims asserted in the State and

_____

[2]United fails to advance an alternative method of allocation.

[3]United's triggered policies provide a total CGL indemnity limit of $39,800,000 ($900,000 per year in primary and $19,000,000 per year in excess coverage).

Federal Action, this Court held that the policies of two other insurance companies, General Star Indemnity Insurance Company ("GenStar") and Specialty National Insurance Company ("Specialty National"), were triggered.  (1/27/06 Orders, Docket Nos. 308, 310).

On March 22, 2004, Insureds and the Underlying Plaintiffs entered into a settlement agreement that disposed of the State and Federal Actions in their entirety.  The terms of the $31 million settlement did not contain any allocation of the total settlement amount among the various claims asserted in the State and Federal Actions.  Two of the three potentially liable insurance companies, GenStar and Specialty National, participated in the settlement negotiations and have subsequently settled with Insureds in this coverage action.[4]  Despite being repeatedly asked to participate in settlement negotiations that addressed both the State and Federal Actions, United National failed to do so.  (Insureds' Exs. D-M, February and March 2004 correspondence between Insureds and United re: settlement negotiations.)

## II.    Analysis

This Court has determined which CGL primary and excess policies are triggered for the slander/libel/defamation claims asserted in the State Action and the § 1983 claims asserted in the State and Federal Actions.  Insureds have now presented the Court with undisputed evidence that the economic damages flowing from these claims are indivisible because they both address conduct that harmed the Underlying Plaintiffs' business and business reputation.  There is no feasible way to separate the various covered and uncovered causes of the Underlying Plaintiffs' economic damages reflected in depleted

---

[4]GenStar agreed to pay $10.25 million of the $31 million settlement, and Specialty National agreed to pay $8.5 million.

attendance, fewer shows, lower revenues, less quality bookings, less sponsorship, more debt and more expenses. Moreover, because Insureds have shown that the damages are continuing in nature, they are also indivisible among the triggered policies. (Insureds' Br. at 8-9; Exs. R, S, Econ. Loss Reports; Ex. T, Riberas Dep. at 43-49, 128-30; Ex. U, Wickersham Dep. at 43-48).

As the Michigan Supreme Court observed in *Gelman Sciences, Inc. v. Fidelity & Casualty Co. of New York*, 572 N.W.2d 617 (Mich. 1998):

> [I]n some cases in which the plaintiff has been able to establish that . . . damage occurred sometime within one or several policy periods, the plaintiff may not be able to pinpoint when the . . . damage actually occurred, or to apportion the amount of damage occurring during each period. In such cases, we agree with the commentators that suggest that courts should establish some means of allocating the risk among insurers.

*Id.* at 324.[5]

United's argument that Insureds must do the impossible; i.e., divide indivisible, continuing damages among triggered insurance policies, is rejected. Insureds have previously convinced this Court that their claimed loss falls within the coverage of United's primary and excess policies for two policy periods. Contrary to United's argument here, the decisions in *Strong v. Hercules Life Ins. Co.*, 280 N.W. 55 (Mich. 1938), *Harrow Prods., Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015 (6th Cir. 1995), and *Ososki v. St. Paul Surplus Lines*, 156 F. Supp.2d 669 (E.D. Mich. 2002), do not hold that an insured bears the burden of proving the amount of a settlement that is attributable to a specific insurer under circumstances similar to those presented here. United's reliance on *Progressive Architects v. Security Ins. Co. of Hartford*, Nos. 95-1935, 95-1981, 1996 WL 724364 (6th Cir. Dec. 16,

---

[5]It is not disputed that Michigan law governs this insurance dispute.

1996), is likewise misplaced.  There, the Sixth Circuit observed that "Michigan has not embraced a specific method for allocating costs between covered and uncovered claims." *Id.* at *3.  It further observed that, despite the insured's claim that it was possible to divide damages between covered and uncovered claims, the insured failed to present evidence doing so.  *Id.*  Accordingly, the Sixth Circuit affirmed the trial court's adoption of a damage amount for covered claims based on the insurer's evidence.  *Id.*  Unlike the insured in *Progressive Architects*, here Insureds have shown that Underlying Plaintiffs' damages cannot be divided between defamation and § 1983 claims or among policy years.

This Court also rejects United's arguments that the underlying defamation claims were defensible and could have been settled for little, if any, damages.  (United Br. at 13-14.) Despite Insureds' repeated urging, United did not actively participate in the negotiations that led to the March 22, 2004 agreement settling the underlying State and Federal Actions in their entirety.  Accordingly, United will not be allowed to benefit from any arguments about its reasonableness that United could have but did not raise during settlement negotiations.[6]  A contrary ruling would discourage settlement; a policy disfavored under Michigan law.

The Michigan Supreme Court in *Gelman* declined to decide the best method of allocation, but instructed that the "courts should not employ a strict standard of proof regarding injury in fact and should endeavor instead to fairly allocate the risk."  *Id.* at 324, 325.  This Court is now prepared to examine the language of United's policies and

---

[6]United concedes that, in order to recover a settlement payment, Insureds need not establish actual liability in the Underlying State Action.  Rather, Insureds need only show potential liability and a settlement that is reasonable.  (United Br. at 11, n.8.)  Insureds present here undisputed evidence showing that the settlement was reasonable.

undertake the task of determining the appropriate method of allocating liability for the settlement amount among the three insurers with triggered policies.

### A.  United Policy Language

As instructed in *Gelman*, this Court begins its analysis with United's policy language. The allocation method to be applied here must be consistent with policy language.  The CGL insuring agreement provides that:

> The Company agrees, subject to the policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay by reason of the liability imposed upon the **ASSURED** under contract or agreement, for damage direct or consequential, and expenses, all as more fully defined by the term, **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY** . . .  at any time resulting therefrom, suffered or alleged to have been suffered by any person(s) or organization(s), . . . arising out of any **OCCURRENCE** from any cause . . . happening during the **PERIOD OF INSURANCE**.

(United Policy, § II, CGL, at 26.)  The following Policy definitions are relevant:

> **22.**  **ULTIMATE NET LOSS** means the total sum which the **ASSURED** is obligated to pay because of loss or damage covered under any Section of this policy, either through adjudication or compromise, after making proper deductions for all recoveries and salvages.
>
> **ULTIMATE NET LOSS** also includes . . . all sums paid as . . . expenses of lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims and **SUITS** which are paid as a consequence of any occurrence covered hereunder. . . .
>
> * * *
>
> **3.**  **OCCURRENCE** means an accident or a happening or event or a continuous or repeated exposure to conditions which results in unexpected and unintended . . .  **PERSONAL INJURY** caused by a covered loss during the **PERIOD OF INSURANCE.** All . . . **PERSONAL INJURY(ies)** to one or more persons . . . arising out of . . . a happening or event or a continuous or repeated exposure to conditions shall be deemed one **OCCURRENCE**.  . . .

6

(United Policy, § I Definitions at 17; § II Definitions at 28.)  United's excess policies follow form to the CGL portion of its primary policies.  (United Excess Policy, GL Fol. Form Endorsement.)

Insureds urge this Court to follow the decision of the Michigan Court of Appeals in *Dow Corning Corp. v. Continental Casualty Co.*, Nos. 200143-54, 1999 WL 33435067 (Mich. Ct. App. Oct. 12, 1999), and conclude that United's use of similar "all sums" language in its policies requires that the "all sums" method of allocation be applied here. This Court declines to do so.  Unlike in *Dow Corning*, here there is no additional policy language expressly promising that, in the event of a continuing personal injury, the insurance company would continue to protect the Insured for damages arising out of that personal injury even after the policy's termination date.   *See id.* at *8.

This Court concludes that the pro rata "time-on-the-risk" allocation method is appropriate here.  This is the approach adopted by the Michigan Court of Appeals in *Arco Indus. Corporation v. American Motorists Insurance*, 594 N.W.2d 61 (Mich. Ct. App. 1998). The *Arco* Court examined the five possible allocation methods discussed by the courts and commentators, including the "all sums," "pro rata by policy limits (coverage provided)," and "time of the risk" methods.  *Id.* at 68.  It concluded that the "time-on-the-risk" method should be used in circumstances like those presented here; i.e., continuing injury and successive insurance policies.  *Id.* at 69.  It found this approach to be consistent with policy language that provides coverage for damage that occurs "during the policy period."  *Id.*  United's policies similarly provide coverage for personal injury damage resulting from an occurrence that happens "during the period of insurance."  Two recent decision from the United States District Court for the Western Division of Michigan similarly applied the pro rata "time-on-

7

the-risk" allocation approach under similar circumstances. *See Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 4:01-CV-157, 2005 WL 1610663 (W.D. Mich. July 1, 2005) and *Century Indemnity Co. v. Aero-Motive Co.*, 318 F. Supp.2d 530 (W.D. Mich. 2003) (addressing allocation of defense costs).

In *Stryker*, the insured had filed suit seeking a declaratory judgment holding that its two insurers were obligated to pay for "the sums incurred in defending and settling more than 70 lawsuits seeking damages for bodily injury allegedly caused by an implanted artificial knee sold by Stryker." *Stryker*, 2005 WL 1610663, *1. One of the insurers argued that, because the pro rata "time on the risk" method of allocation applied, the insured could not show exhaustion of its policy's self-insured retention amounts or coverage. Stryker, the insured, disagreed, arguing that the "all sums" allocation method applied.

The *Stryker* Court first discussed the differences between the pro rata "time-on-the-risk" and "all sums" allocation methods. Under the "time on the risk" approach, "insurers are responsible for the portion of the underlying injury that occurred during their policy period, thus coverage is prorated across each period in which damage occurred." *Stryker*, 2005 WL 1610663 at *4-5 (citing *Ins. Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224-25 (6th Cir. 1980) and *Arco Indus. Corp.,* 594 N.W.2d 61 (Mich. Ct. App. 1998)). Under the "all sums" allocation approach, "the insurer on each triggered policy" is held "jointly and severally liable" for the entire liability "where an injury spans multiple policy periods." *Id.* (citing *Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034, 1047 (D.C. Cir. 1981) and *Dow Corning*, 1999 WL 33435067 (Mich Ct. App. Oct. 12, 1999)).

The *Stryker* Court then predicted that "if presented with the facts of this case, the

8

Michigan Supreme Court would adopt the *pro rata* 'time on the risk' method of allocation applied in *Arco Indus.* and would reject the 'all sums' approach adopted in *Dow Corning.*" *Id.* at 6. That prediction was supported by the following reasoning. First, the policy language at issue in *Stryker* was consistent with that found in *Arco Industries* and not that found in *Dow Corning. Id.* at **6-7. "[T]he coverage provision of the National Union policy is not ambiguous, it requires coverage for liability resulting from a bodily injury during the policy period." *Id.* at *7. Second, the "pro rata 'time on the risk' allocation is also consistent with the 'injury in fact' trigger of coverage adopted by the Michigan Supreme Court in *Gelman Sciences*, 456 Mich. at 319-20, 572 N.W.2d at 623-24." *Id.* Third, "the inherent simplicity and predictability of the *pro rata* 'time on the risk' allocation method" allowed for a fair and easy allocation of damages among triggered insurers. *Id.* at *8 (citing Michael G. Doherty, Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257, 281-83 (1997)(hereinafter "Doherty").

This Court reaches the same result here for the same reasons. The policy language at issue here is consistent with that found in *Arco Industries* and not that found in *Dow Corning*. United's policies are not ambiguous and require coverage for liability resulting from bodily injury that occurred during the policy period. Moreover, this Court finds persuasive the arguments that the pro rata "time on the risk" allocation method is consistent with the "injury in fact" trigger for coverage adopted by the Michigan Supreme Court. It also finds persuasive arguments that the "time on the risk" method is inherently simple to apply and thus "promotes predictability, reduces incentives to litigate, and ultimately reduces premium rates." Doherty, 64 U. Chi. L. Rev. at 281. As one commentator observed:

> Courts can easily administer the time-on-the-risk method. Once a court

9

determines the scope of the progressive injury, that is, the total damage and the period of time from exposure to manifestation, it can readily allocate the damages among the triggered policies.  The court divides the total damages by the number of triggered years and simply allocates to each year the result.  If, for example, a certain policy spans three years out of a total of ten triggered years, then thirty percent of the damages will be allocated to that policy.

*Id.*

This Court rejects Insureds' alternative argument that the pro rata allocation by policy limits method should be applied here.  (Insureds' Br. at 16-18.)  Under that method, "liability is determined by multiplying the number of years an insurer provided coverage by the limits of that insurer's policies, and then assigning liability corresponding to the ratio of the total coverage provided by that insurer to the total coverage provided by all the triggered policies."  *Arco Industries*, 594 N.W.2d at 68 (citing Doherty, 64 U. Chi. L. Rev. at 274-275, and *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974 (N.J. 1994)).  This method is far more difficult to apply and produces less predictable results.  Doherty, 64 U. Chi. L. Rev. at 276.  Its biggest drawback, however, is that it "gives the biggest slices" of liability responsibility "to the policy years that provide[] the greatest coverage."  *Id.*  "[I]t tends to maximize coverage in individual cases and disproportionately assign liability to generous policies, disproportionately increasing their price, thus making them more difficult to purchase."  *Id.*

## III.  Conclusion

For the above-stated reasons, this Court concludes that, under the facts presented here, the *pro rata* "time-on-the-risk" allocation method should be applied to the $31 million settlement of the underlying State and Federal Actions.  Because it has been determined that damages reflected in that $31 million settlement are indivisible, the pro rata "time-on-

the-risk" method of allocation should be applied to allocate liability among all insurers with

triggered policies.[7]  As another commentator aptly observed:

> In a perfect world it would be possible to hold each insurer liable only for that portion of liability that is allocable to the policy period in question.  This is theoretically satisfying, but will almost always be infeasible.  For all practical purposes, once a settlement is reached and liability is found for all triggered insurers, the real issue becomes whether the injury or damage suffered during the different policy periods is indivisible.   If so, the apportionment of the settlement costs should be based on a pro rata by time on the risk method.

Rob S. Register, Comment, *Apportioning Coverage Responsibility of Consecutive Insurers*

*When the Actual Occurrence of Injury Cannot Be Ascertained:  Who Has to Contribute in*

*a Settlement?*, 49 Mercer L. Rev. 1151, 1164 (1998).

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 19, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 19, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[7]As Insureds concede, under this allocation method, United National will have an indemnity obligation of $10.33 million.  (Pl.'s Br. at 16-17, n.19.)

11