UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF STERLING HEIGHTS, ET AL.,

    Plaintiffs,

v.

UNITED NATIONAL INSURANCE
COMPANY, ET AL.,

    Defendants.
                                    /

Case No. 03-72773

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [395] CONCERNING CONSEQUENTIAL
DAMAGES AND PREJUDGMENT INTEREST**

    This insurance dispute comes before the Court on the parties stipulation and the Court's agreement that Plaintiffs ("Insureds") and Defendant United National Insurance Company ("United") may provide supplemental briefing on the unresolved issues raised in Insureds' motion for summary judgment [395] concerning the calculation of consequential damages for United's breach of its insurance contract with Insureds and prejudgment interest. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), these unresolved issues will be decided on the briefs and without oral argument.

    For the reasons stated below, Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. Background Facts

The Court is familiar with the facts and issues presented in this coverage action as well as the underlying State and Federal Actions, having presided over the underlying Federal Action and having addressed numerous coverage issues in this matter. The background and procedural facts relevant to the consequential damages and prejudgment issues are as follows.

On March 22, 2004, Insureds and the Underlying Plaintiffs entered into a $31 million global settlement agreement that disposed of the State and Federal Actions in their entirety. The City used $6 million from City funds and $25 million from the sale of judgment bonds in order to finance the $31 million settlement of the underlying State and Federal Actions. Initially, the City used $16 million from City funds. When the $25 million in judgment bonds became available three months later, $10 million of that was used to reimburse the City for the use of its funds.

The only remaining disputes in this coverage action are those between Insureds and United. Two of the three potentially liable insurance companies, General Star Indemnity Insurance Company ("GenStar") and Specialty National Insurance Company ("Specialty National") settled with Insureds. GenStar agreed to pay $10.25 million of the $31 million settlement, and Specialty National Agreed to pay $8.5 million. In July 2006, Insureds used $9,669,134 of the $18,750,000 received in settlement proceeds from the City's two other insurance companies to partially defease the judgment bonds. The remainder was used (1) to reimburse the City's general fund for $6 million used to finance payment of the $31 million settlement, (2) to pay costs associated with the partial defeasement of the $25 million judgment bonds, and (3) to pay outstanding defense and other costs related to this

litigation. (Plf.'s Br. at 7-8.)

On January 19, 2007, this Court determined that the *pro rata* "time-on-the-risk" allocation method should be applied to the $31 million settlement because the damages reflected in that global settlement were indivisible [354]. Under this allocation method, the Court found that United had an indemnity obligation for $10.33 million, or one-third of the $31 million settlement. The Court did not, at that time, determine United's indemnity obligation for defense costs. It did, however, subsequently determine that Insureds need only satisfy a single self-insured retention [543].

On August 1, 2007, this Court issued an Opinion and Order granting in part and denying in part Insureds' motion for summary judgment regarding consequential damages, prejudgment interest, and defense costs [603]. The Court determined that Insureds were entitled to (1) defense costs from Defendant United to be calculated on a *pro rata* "time-on-the-risk" basis; (2) consequential damages with an accrual date of January 27, 2006; and (3) statutory prejudgment interest calculated from the July 18, 2003 filing date of Insureds' complaint if it is subsequently determined not to be an improper double recovery.

As to defense costs and consequential damages, the Court further ordered that: (1) Insureds had 30 days to produce all supporting evidence to United, (2) United would then have an opportunity to raise challenges; i.e., arguments as to the amount of defense costs, Insureds' failure to mitigate, and allocation of consequential damages, (3) Insureds would have an opportunity to respond, and (4) all unresolved disputes would be submitted to a Special Master to be appointed by the Court. As to prejudgment interest, the Court determined that, if left unresolved, the following issues would be referred to a Special Master: (1) whether prejudgment interest should be awarded, (2) the amount to be

3

awarded, and (3) whether any award of prejudgment interest should be allocated under a *pro rata* "time-on-the-risk" method.

Rather than proceed with a Special Master, the parties stipulated to an alternative procedure in an attempt to resolve the above issues among themselves. (8/15/07 Stip., Doc. Entry 605.) The parties met and conferred, exchanged documents and position letters, and then submitted additional briefing to the Court on the issues of consequential damages and prejudgment interest on which they could not agree. The issue of defense costs is not addressed in this additional briefing.[1] This Court is now prepared to rule on the legal issues concerning consequential damages and prejudgment interest raised in these supplemental briefs. There are disputed factual issues that remain.

## II. Analysis

### A. Consequential Damages

Using the accrual date of January 27, 2006, Insureds now seek consequential damages, calculated as of August 31, 2007, that include: (1) $1,775,593, representing the present value of interest on $25 million judgment bonds procured on June 29, 2004 and partially defeased on July 31, 2006; (2) interest on the judgment bonds that will continue to accrue at the rate of $1,695 per day (Plfs.' Ex. 5, Crawford Report at 2); and (3) $20,730 in expenses incurred when $9,669,134 of the $18,750,000 received in settlement proceeds from the City's two other insurance companies was used to partially defease the $25 million judgment bonds in July 2006.

---

[1] From the parties' submissions, it appears that they are very close on the issue of defense costs. United reports that it has offered to accept $884,333 of the $934,333 that Insureds claim is owed them. United, however, has not yet heard back from Insureds.

4

Defendant United argues that (1) United's responsibility for consequential damages should be calculated on a *pro rata* "time-on-the-risk" basis because this is consistent with this Court's prior rulings as to United's responsibility for indemnification of the $31 million settlement and defense expenses; (2) applying that *pro rata* "time-on-the-risk" method here, United should be held responsible only for the interest owed on $8,333,333; one-third of the $25 million judgment bonds; (3) the $20,730 in defeasance expenses are not consequential damages that can be attributed to United; and (4) consequential damages for interest owed on the $25 million judgment bonds should be reduced because Insureds failed to properly mitigate those damages when they received $18.75 million from GenStar and Specialty National but reduced the City's bond obligation by only $9.67 million.

**1. *Pro Rata* "Time-on-the-Risk" Method Will be Used**

This Court finds persuasive United's argument that its responsibility for Insureds' consequential damages should be determined by using the same *pro rata* "time-on-the-risk" method used in determining its responsibility for indemnification of the $31 million settlement and defense costs. United, however, improperly applies this method to Insureds' consequential damages. It is not the $25 million in judgment bonds that are consequential damages and thus divided by one-third. Rather, it is the interest on those bonds that constitute consequential damages incurred as a result of United's breach. Accordingly, United is responsible for one-third of the interest on the $25 million judgment bonds (using the accrual date of January 27, 2006).

United informs the Court that it has not yet independently calculated the amount of interest owed on the $25 million judgment bonds. Thus, the Court will not decide that factual issue. As guidance, however, the Court instructs as follows. If Insureds' interest

5

calculations are used, then United will be responsible for 33% of the $1,775,593 calculated by Mark Crawford as of August 31, 2007 (that is, $591,864), plus 33% of the $1,695 *per diem* continuing loss (that is, $565 per day) until the date a final judgment is issued in this matter.

**2. Partial Bond Defeasance Expenses are Consequential Damages**

Contrary to United's arguments here, the $20,730 in defeasance expenses are costs incurred by Insureds to satisfy their duty to mitigate their damages. But for United's breach, there would be no damages and no duty to mitigate. These expenses arise naturally from United's breach and are properly considered as consequential damages. That Insureds were able to mitigate their damages because GenStar and Specialty National settled the claims against them does nothing to change these facts. Thus, United is responsible for one-third of this $20,730 expense (that is, $6,910).

**3. Insureds Have Not Failed to Mitigate Their Damages**

United also argues that Insureds failed to properly mitigate their damages when they received $18.75 million in settlement funds from GenStar and Specialty National but only reduced the City's bond obligation by $9.67 million and used the rest to reimburse the City's general fund for the $6 million used to finance the $31 million settlement and to pay defense bills and other unpaid litigation costs. The City responds that it has the right to mitigate its damages resulting from United's breach in the manner it chooses. It chose to reimburse itself first for indemnification and defense costs for which United is one-third responsible rather than to further defease the judgment bonds and thus reduce the consequential damages for which United is one-third responsible. United does not provide

6

the Court with any authority that precludes the City from choosing to mitigate its damages in this manner.

## B. Prejudgment Interest

The parties concede that the amounts United owes for consequential damages, defense costs, and prejudgment interest are still in dispute. Thus, this Court's task is to resolve: (1) whether an award of prejudgment here permits an improper double recovery, and (2) how an award of prejudgment interest is to be calculated.

First, construing the plain language of Michigan's prejudgment interest statute, this Court concludes that prejudgment interest is to be calculated from the July 18, 2003 date the Insureds' complaint was filed. *See* Mich. Comp. Laws § 600.6013(8).[2] *See also Ayar v. Foodland Distributors*, 698 N.W.2d 875 (Mich. 2005) (holding that statutory interest on costs and mediation sanctions accrue from the date the complaint is filed rather than the date costs and sanctions are awarded). United's arguments to the contrary are rejected.

Second, this Court concludes that Insureds are entitled to prejudgment interest,

---

[2]Mich. Comp. Laws Ann. § 600.6013(8) provides, in pertinent part, that:

> [F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. <u>Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs</u>. The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney.

(Emphasis added.)

pursuant to Michigan law, on a final judgment against United that will include: (1) one-third of the $31 million settlement (that is, $10.33 million); (2) one-third of consequential damages comprised of (a) interest on the $25 million judgment bonds (an amount yet to be determined), and (b) $20,730 in costs incurred in the July 2006 partial defeasement of the judgment bonds; and (3) one-third of the non-reimbursed defense costs (an amount yet to be determined) and other taxable costs. Statutory prejudgment interest ultimately awarded on each of these items in a final judgment will begin on July 18, 2003, the date Insureds filed their complaint.

United's arguments, that an award of prejudgment interest on United's one-third share of the $31 million settlement ($10.33 million) would allow prejudgment interest on amounts the City has not paid, are without merit. The City paid the entire $31 million settlement to the Underlying Plaintiffs. That it was financed with $6 million from the City's general fund and the remaining $25 million from judgment bonds does not alter the fact that the City paid a $31 million settlement. This Court has determined that United is responsible for one-third of that $31 million settlement, or $10.33 million. Michigan's prejudgment statute plainly states that prejudgment interest "is calculated on the entire amount of the money damage, including attorney fees and other costs." Mich. Comp. Laws Ann. § 600.6013(8). As discussed above, a final judgment in this case against United will include the $10.33 million figure.

This Court also rejects United's argument that an award of prejudgment interest on United's one-third share of the interest owed on the judgment bonds would allow a double recovery. As recently observed by the Michigan Court of Appeals, Michigan's prejudgment interest statute "'serves the purpose of compensating the prevailing party for loss of the use

of the funds awarded as a money judgment, as well as offsetting the costs of bringing a court action.'" *Kloian v. Van Fossen*, Nos. 262953-54, 2007 WL 942195, *8 (Mich. Ct. App. March 29, 2007) (quoting *Old Orchard By The Bay Assocs. v. Hamilton Mut. Ins. Co.*, 434 Mich 244, 252; 454 N.W.2d 73 (1990)). Insureds here lost the use of $10.33 in funds that will be awarded to it in a money judgment against United. Thus, under Michigan's statute, they are entitled to prejudgment interest on that amount. Moreover, as a result of United's breach, Insureds also had to obtain $25 million in judgment bonds to finance the $31 million settlement and had to pay interest on those bonds. As a result, Insureds also lost the use of the interest amounts owed on the judgment bonds. One-third of that interest amount will be awarded to Insureds in a money judgment against United. Thus, under Michigan's statute, they are entitled to prejudgment interest on that amount as well. This is not an impermissible double recovery that places Insureds in a better position than they would have been if United had not breached their insurance contract.

### III. Conclusion

For the above stated reasons, Plaintiffs' motion for summary judgment [395] is GRANTED IN PART and DENIED IN PART. The remaining issues left to be resolved include the calculation of defense costs, consequential damages, and prejudgment

interest.



    s/Nancy G. Edmunds
    Nancy G. Edmunds
    United States District Judge

Dated: October 24, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 24, 2007, by electronic and/or ordinary mail.

    s/Carol A. Hemeyer
    Case Manager